I would, for the benefit of those who have not argued here before, we have this lighting system and when the yellow light comes on, that means you have two minutes to complete your argument. And when the red light comes on, we do expect you to bring your argument to a close at that point. These arguments are being recorded for the purposes of assisting us in writing any opinions that come out of these proceedings, and also they are available to the public, so you need to keep that in mind as you are making your argument. And finally, I would mention to you that rebuttal is for rebuttal only, and we don't expect you to bring up any arguments in rebuttal that have not previously been addressed, either by you or your opponent. With that, we'll call the first case of the day, and that's Allied Home Mortgage Corporation v. United States Department of Housing, and Mr. Alexander, we'll hear from you representing Allied Home Mortgage. May it please the Court, Bruce Alexander on behalf of Allied Home Mortgage Corporation, now known as All Press Home Mortgage Corporation, I'll refer you to the Allied Court v. HUD, who is suspended without notice and without an opportunity to present any rebuttal evidence on November 1, 2011. My clients very much appreciate the opportunity to be here today and explain why those suspensions were improper. Briefly, the suspension of Allied Court was improper because it relied on an improper theory of corporate successor liability under federal common law, and both Mr. Hodge and Mr. Allied Court were improperly suspended under the arbitrary and capricious standard because there was nothing in the record showing anything sufficiently immediate as a threat to HUD or the public interest to justify a suspension under the circumstances that were imposed in this case, or if there was anything in the record, it was insufficiently explained and articulated in the notice, insufficient for judicial review, and should be subject to additional discovery at the court level. We think, however, the court can claim on its own that neither of these suspensions were improper because of the matter of law for Allied Court, or either one of them because of lack of immediacy. I don't mean to try to control your argument, and you may be getting to this, but the issue that concerns me most is the issue of mootness. Now, I can ask you about that now, or I can wait until you get to that point if you want to. No. I'm happy to discuss that now. Because the thing that brought it up is you were talking about remanding it. It seems to me that what we have done, what we would do here, even if we found in your favor, and we remanded it, a mandate would be sent back to the district court to add to the record so that the agency would have an opportunity to state the grounds that it was using to suspend your clients. And the government says, we don't want to do it. We dropped that case. We're not going to do anything. Because we've got this other proceeding going here, and this one means nothing to us. This one, as far as we're concerned, is moot. And so all you're asking us to do, in the light of the circumstances in this case, is to give an advisory opinion on whether they were right in a case that now they've dropped. Your Honor, with all due respect, the position that you've stated sort of begs the answer. The fact that we are here today and briefing this issue before this court and arguing these issues show that this case is not moot. No, it doesn't. How can that possibly be so? I mean, you say, because I say it's not moot, and because I appeared in here at court to argue this case means it's not moot? No, Your Honor. You may want an answer, but it may be legally moot. Am I misunderstanding you? Well, I think so, Your Honor. Let me try again. We're looking for a declaratory judgment that the suspensions were voided out of the show, just like the court addressed in the Sloan situation. There is value to that declaration to my clients. The fact that the government deminimizes that value, deprecates that value, doesn't mean that it doesn't have value to my clients. And we have cited to the court a number of cases where— It has reputational value. Is that what you're saying? It has reputational value, yes, Your Honor. And it may have actual concrete value as far as dealing with the creditors and people with whom Mr. Hodge and Allied Corp. have historically done business. Now, why wouldn't we, if we, in the opinion that we would write declaring mootness, we would say we determined this case is moot, but in doing so, we do so in the light of the concessions that the government has made, and that is that they apparently concede that they were improper in issuing these temporary suspensions because they have dropped that case and they've moved on to a more fully developed record type of case. Well, Your Honor, there's a couple of things I've wrapped up in that. Number one, the fact that the government dropped the case, I think, does indicate a concession that the suspension should never have been implemented in the first place, and that's what we're looking for, is a formal adjudication, a formal decision by this court on that issue under its de novo review of a motion for summary judgment at the court. That's one issue. The other issue, though, Your Honor, is whether or not the government can implement a suspension improper as it is, and then avoid judicial review by simply saying, oh, sorry, just ruling. We didn't really mean to do it in the first place. And whether that kind of behavior, manipulating the jurisdiction of the court by first implementing a suspension that literally destroys a company, literally destroys a company, hundreds of people lose their job, millions of dollars of credit are at risk and lost, can simply say, sorry, we just made a mistake, or we didn't really mean it, without having a judicial review on this. This is the only kind of relief available to Mr. Hodge and Allied Court. What happens, say we rule in your favor on the merits of the case, and what happens after that? If the government doesn't want to pursue the case any further, it all just drops. Well, that's what happens with any court decision, Your Honor. It could just drop. The question is, what happens? It happens to Mr. Hodge and his company. They can take that, and it means something in this community. Like what? I mean, tell me. If we say the evidence was inadequate, and the government can go back, and if they can prove all the allegations that were made in the DOJ complaint, then they can suspend this company. After an opportunity to expose the errors and the misinformation that is in the government's complaint, yes. If that's what happens eventually, Your Honor, then that is what the judicial system is for. But we wouldn't get into the weeds on that, would we, in an opinion? In other words, we wouldn't say whether the government was right or wrong about the allegations. We would only say that such allegations, without an investigation on the part of HUD or any further support for the allegations, cannot be a basis for suspending a company. That's all we would say. Or I hope, Your Honor, you might consider saying that the suspension of Allied Corp. was contrary to law. Well, that would be implicit in what we did. I mean, I guess we would say that. That's what we're hoping. And that does mean something to the relationship that Mr. Hodge has and had with various lenders, employees, business partners, and his own reputational value. It's not just his reputational value. It is also those relationships which are... But we never say anything. We never say that what the government said is not true. Your Honor, with respect to the successor liability, I think that's exactly what the Court could say and should say. With respect to the other bases on which the government has ostensibly based this suspension, without articulating an adequate record, I think, for judicial review, within the meaning of the case law, the State Farm case, and the other cases that we have cited to the Court, that is right. There is still a lawsuit going forward. The government lawsuit is going forward. So those things are being adjudicated. Is there criminal prosecution going forward, too? No, Your Honor, that is a mistake. There is no criminal prosecution going forward. If there is one, we're not aware of it. And that would be surprising. Even under the circumstances that we find this Star Chamber proceeding to have taken place. I'm sorry, I couldn't resist. That's okay. But, you're right, Your Honor, in the sense that you need not get into the merits to say that what the government has alleged, the record, and this record is largely a declaration by Mr. Milner from HUD, which under the Overton part, by its very nature, is a post hoc rationalization within the meaning of State Farm. So you're not concerned about whether the agency has ceased to take action against your clients? You simply want us to declare that what they did was wrong? Suspension, Your Honor. That's what we're looking at. There is a lawsuit. The government is continuing to take action against them. They have? They will? There is this lawsuit taking place right now, Your Honor. Yes. It is pending right now and actively in discovery before Magistrate Hanks. That's the Department of Justice lawsuit? That's the Department of Justice lawsuit that this case, by the U.S. Attorney's letter and by the declaration of Milner, is based on, this suspension is based on that lawsuit. Now, in the briefing, the government takes these... Now, isn't HUD, are they also proceeding administratively against you at this time? That's been held in abeyance, as far as I, again, as far as I know, Your Honor. But you don't know if it's really ceased or not? Well, it's out there. I mean, and certainly the lawsuit is out there, which is the same fundamental issues that are supposedly based on this suspension, all of which we say nothing is immediate. I mean, there was nothing immediate about Mr. Hodge's problems, or supposed problems, because they were all based on Allied Cap. The significance of this should not escape the court. Allied Cap was a loan correspondent, a loan correspondent, which is a broker, and HUD decided to not regulate Allied Cap as a broker, effective January 1st, 2011. So for many, many months prior to this suspension being issued, there was no Allied Cap operating, as far as HUD was concerned. All of Allied Cap's capital branches were shadow branches within the meaning of what the government has alleged. That's how immaterial these shadow branch allegations are. They don't have anything to do with anything immediate. And on the point of immediacy for Allied Corp., I also want to make this point. The government argues in their brief that there's nothing in the notice really relying on the lawsuit. The lawsuit is mentioned in the brief, but there's a Freudian slip in the notice. One of the justifications that HUD states for the suspension is, you, Allied Corp., are one of the nation's largest brokers. The significance of that should not be lost. The government brief spends many pages explaining why there's a difference between sponsor mortgagees and loan correspondents. Allied Corp. was a sponsor mortgagee who underwrote loans. Allied Capital was a broker, a loan correspondent. Allied Corp. was not a broker. Yet, that's what HUD called Allied Corp. in its notice. That's how basically screwed up this entire process was from the get-go. From the very get-go. The government says they started this investigation. They started this investigation because of the unusually high default rates for Allied Corp. The only evidence of the default rates before Judge Harmon were the neighborhood watch numbers from the end of September 2011, two months before the suspension. She found, because that's the only evidence that was before her, that those numbers indicated that the default rate for Allied Corp. not CAP, Allied Corp. was better than average. How does that justify an investigation based on unusually high default rates? It's beyond me. Now what changed Judge Miller's mind? Very briefly. I think the court was led astray by the argument that there was sufficient evidence in the record that otherwise justified it. And there was two mistakes in that. Number one, that's a post hoc rationalization. The basis for the suspension of Allied Corp. was a successor theory of liability. And there were two things. One, shadow branches, and two, branch expenses. Neither of which, neither of which, the government showed any immediacy. They didn't identify one loan, one branch, one transaction of this shadow branch theory of liability. And they relied on an underwriter that left, an underwriter, an underwriter supervisor that left Allied Corp. in August of 2011. The evidence before Judge Harmon indicated that the branches that Allied Corp. purchased from Allied CAP, those branches were purchased in September. So this basis for finding shadow branches on Allied Corp.'s behalf was completely false and without foundation. I see I'm out of time. Well, I took up some of your time. Did you miss any point that you wanted to make? You can have one more minute just to bring the point to our attention if you wish. I think you covered it pretty well. No, I think that I basically covered the major point. Would you, is the government relying on the fact that the same owner is still running the Allied Corp. and that his past practices are apt to continue? Have they abandoned that rationale for the agency's action? Well, I would think, Your Honor, that they should have been because Judge Miller found that that was an insufficient basis. Even his votes were for some to judge them. And beyond that, that was not the basis articulated in the notice of suspension for Allied Corp. Allied Corp.'s notice of suspension was based upon having Mr. Hodge as a president, not his past activities. And query whether, given the time frame of the quality control activities that took place, these shadow branch activities that took place, these annual report activities that supposedly took place where the evidence is from the former branch, I mean, former council for Allied Capital, all of those took place prior to, if not years prior to, 2011. Okay, Mr. Alexander. Thank you very much. Yes, sir. Thank you. You've saved some time for rebuttal. Ms. Vargas for the government. Good morning. May it please the Court. My name is Jeanette Vargas. I'm a Special Assistant United States Attorney for the Southern District of Texas, and I represent the government in this matter. The judgment in this case can be affirmed on two separate grounds. First, because the challenge suspensions were rescinded in May 2012 and new administrative proceedings have been instituted against both Mr. Hodge and Allied Home Corporation, proceedings that are not at issue in this litigation. The validity of those original suspensions has now been rendered moot. Second, as the District Court recognized, the administrative record in this case contains overwhelming evidence that James Hodge, as the owner, director, and CEO of both Allied Home Mortgage Capital Corporation and Allied Home Corporation engaged in a decade-long practice of deliberately flouting HUD's requirements for participation in the Mortgage Insurance Program, submitted false information to HUD concerning the company's compliance with those requirements in order to continue their deceptive practices. And that evidence of a longstanding fraud perpetrated on the FHA program justified the immediate suspension of both Mr. Hodge and Allied Corporation. I'd like to address the jurisdictional issue of moving the case. Now why did you drop it then? Why did you, once the court decided that, or granted the injunction and enjoined you from the temporary suspensions, why did you concede that point and now arguing that it's moot? Your Honor, we did not concede that the suspensions were invalid. New suspensions that rescinded, excuse me, new department notices that supersede the suspensions were issued with a new proceeding that have more extensive charges against both Mr. Hodge and Allied Corporation. So in addition to the old charges, there's a list of new allegations and the new suspensions in the May 2012. We certainly, HUD did not drop its administrative debarment proceedings. What they dropped was the immediate suspension of Mr. Hodge and Allied Corporation, a suspension that was only in effect for two weeks because it was preliminary. But apparently, I mean, you conceded, it seems on the face of it, that you conceded the error that they should not have been suspended on the allegations of the DOJ complaint, which was essentially your case. Your Honor, we have not conceded that. In fact, we stand before the court prepared to defend those just as we did in the district court. Well, now that, you know, that's kind of concerning. I thought you probably conceded, or at least, I mean, I don't know whether I have any basis to conclude this, but it was my impression that you had conceded that they should not have been temporarily suspended on the basis of the information that they were temporarily suspended on. No, Your Honor, our mootness argument is not. Then that makes it much less moot than I thought it was. Well, Your Honor, the reason it's moot is because there's no, it's a redressability issue, essentially, as Your Honor recognized in questioning Mr. Alexander earlier, which is any declaration, declaratory relief that the appellants are seeking wouldn't redress the only outstanding injury that they're claiming, which is the reputational harm. And that's a collateral effect that the Supreme Court in the Spencer case recognized is not sufficient to defeat mootness. The legal effects of the suspensions are gone. They're not suspended anymore, and they haven't been suspended since really for two weeks in November 2011. But their argument is not merely that it's reputational, but it's also concrete in the sense that it affects their ability to operate, and that the effect of what you have done here, the government has done, has shut, has effectively ruined, in their words, ruined a going business, and hundreds of people have lost their jobs. Well, Your Honor, I guess the question is... And yet you say we were right to do it. But yet you then, on the other hand, remove the temporary suspensions, and they're not under, now that they're no longer in existence, you're not suspending them, right? We're not immediately suspending them. They're subject to currently pending debarment proceedings that have been proceeding for... But are they viable? Is the company viable now so that they could engage in the mortgage lending business? The record doesn't reflect whether they're viable or not, although I don't believe they've been in the FHA business since their suspension for two weeks in November 2011. Yeah, the suggestion is that you ruined them. That you took the company down, all that took that company down in two weeks is no longer, no reason to suspend them any further because they're non-existent. But the question is, is declaratory relief in this case going to render their business viable again? And that is at most speculative, and in fact highly unlikely. While the standard for establishing whether an injury can be redressed, it has to be highly likely... Well, what they're saying, as I understand it, is that, like Phoenix, they can rise from the ashes if they have their reputation intact. Well, but this proceeding is not going to vindicate their reputation. And let me point to two things in that regard. First of all, there is, as recognized earlier, two pending proceedings against them in which the charges, the underlying charges, are going to be litigated. One is the False Claims Act and FIREA lawsuit pending in district court, which make allegations of a rampant, hundreds of millions of dollars fraud perpetrated against HUD. Those charges will be vindicated or not in the context of that lawsuit. Then there's the debarment proceedings that are also pending against them, which, again, that's where the merits will be resolved. But this case isn't about the merits, and their reputation is not going to be redeemed on the basis of this proceeding. This is only about whether HUD was procedurally proper or improper in issuing those suspensions. I'll also note, secondly, that the district court gave them a decision in their favor two weeks after the suspensions. They didn't rise from the ashes as a result of that. That was two weeks later. They're now suggesting that three years later, a decision that the suspensions, which are still proceeding, the debarment proceedings are still going on, and the merits are going to be litigated, but some decision from this court declaring that there was a procedural, you know, impropriety with those suspensions that were enjoined two or three years ago. Why are you arguing that it's moot? What is your interest in a mootness determination? I think the interest is that it's a jurisdictional issue that the court needs to resolve, and the Chief's Clause is clear that it is moot. We do stand prepared to defend it on the merits as we prevailed on the merits as well before the district court, given the overwhelming evidence in this case that there was program violations, and in fact, the standard below is adequate evidence. The agency has to have adequate evidence, which is essentially a probable cause determination, no more, no less. We had much more than that when the HUD issued their suspensions. There was evidence that Mr. Hodge, as President and CEO of Allied Capital, had essentially run his business in such a manner as to commit a rampant fraud. This wasn't an isolated instance. It wasn't even two or three isolated instances. It was a 10-year continuous fraud where he operated his company in such a way as to violate nearly all of the quality control regulations that HUD imposes upon mortgagees. And I can give you just a few examples on the record of the types of fraudulent activities we're talking about. Mr. Alexander discounted the shadow branch allegations that were a large part of the False Claims Act and Firea lawsuit that's been brought by the Department of Justice. But to put those in context, Allied Capital and Allied Corporation together had 640 registered offices with HUD. They were running 2,200 offices in total. That means more than half, more than twice as many unregistered offices that HUD had no idea were interacting with borrowers, had no ability to regulate those offices and make sure that they were complying with HUD regulations. And the evidence of that comes from Allied's own business records that were submitted to the Department of Justice pursuant to Firea's subpoenas. It was also corroborated by not one, two, three, about seven different witnesses. Okay, now tell me, is what you're saying relevant to this appeal and how is it relevant to this appeal? It's relevant because the standard on the merits of whether or not the government was justified in issuing the suspensions is whether there was adequate evidence that Mr. Hodge and Allied Corporation were violating HUD program requirements. Mr. Hodge directed these activities. He was the one who instituted the Shadow Branch fraud and he did so for more than a decade. Okay, but these are allegations that have not been proved. Am I right about that? They're allegations, certainly, but the question is whether HUD doesn't have to prove them in order to issue a temporary suspension. They have to have adequate evidence. It's a probable cause standard because obviously there will then be a subsequent proceeding at which then they'll have an opportunity to rebut and there'll be the merits of the suspensions. It has to be more than an allegation though, doesn't it? Yes, and there was evidence. And the evidence in this case... Did you put the evidence into the record? Is that evidence in the record? The evidence is in the Milner Declaration, Your Honor, as well as the draft complaint. That was the evidence that was before HUD, which is there was a report sent to HUD that detailed the results of a DOJ investigation. It was a very detailed investigation. They reviewed approximately 200,000 pages of records, both company records, third-party records, state records. They interviewed 27 employees. They looked at emails. And they sent a detailed report to HUD laying out, here's the results of our investigation, here's the evidence, here's quotes from witness interviews, here's emails that they have. You're being faulted for not doing that work yourself and not articulating the reasons based upon your own work. Can you just rely on another agency? Absolutely, Your Honor. Not only is that clear in the governing statute, the Mortgagee Review Board statute, 1708C3, says that the Mortgagee Review Board can suspend a mortgagee based on, quote, any report, investigation, et cetera. Any. It does not have to be a HUD report. It does not have to be a HUD investigation. It can be any, and it actually says that they shall issue a disciplinary action upon having any report or investigation that reveals cause to believe that there are violations of program requirements. And can you, and what about the successor liability theory? Are you able to rely upon that or not? I don't know. Sounds as if you are. You're trying to, anyway. The successor liability argument's a red herring because HUD never purports to rely upon a successor liability theory. You can look at the notices of suspension themselves, which are in the administrative record. At no point do they even mention successor liability. No one was holding Allied Corporation liable as a successor. They were suspended for several different reasons, but one is there was evidence of their own independent wrongdoing in the record, which we detail in our brief. In short, there's evidence that after Mr. Hodge, as Mr. Alexander noticed, to give a little background, at the end of, at the beginning of 2011, there were regulatory changes in the loan correspondent program such that the brokers, like Allied Capital, were no longer permitted. And at that point, Allied Corporation took over what was essentially then the broker business and began operating these origination offices themselves. So there's a transfer of business from Allied Capital to Allied Corporation where Allied Corporation takes over the Allied Capital business of origination. When they do that, the evidence in the record showed that they continue the same types of fraudulent activities with Allied Capital. It's not a successor liability theory. I think the confusion is that it is a continuation of the business model, but that's not successor liability. Successor liability is when you're trying to hold someone liable because there was an asset sale. That's not what we're doing. When they switched ownership, which was a very nominal change since it was the entirely same team, Hodge was the owner of both companies, all the same officers, maintained their titles, they just kept the same business model. So all the fraud that's being committed at Allied Capital, it didn't stop when they went over to Allied Corporation. Mr. Alexander says, we have to have more affirmative evidence that the fraud was ongoing at Allied Corporation, but the agency, first of all, had affirmative evidence. They had evidence that there were still shadow branches being operated by Allied Corporation, that they were still doing the same net-branching activities, which is when you leave the branch owners essentially liable for corporate obligations. All this evidence is in the record. That's right. It's in the administrative record. But it's in the record on this appeal. Yes, Your Honor. Absolutely. The Milner Declaration is at pages 1606 to 1632. And that's where all of this evidence is. As well as the draft complaint that was also sent over to HUD, which is the main part of that is at 1690 to 1705, the administrative record. All right, now did you, whose declaration is this? The Milner Declaration? Yes. And who is he? He was the member of the General Council of HUD. But essentially... That's HUD's declaration and not the DOJ declaration. It's HUD's declaration, but to explain procedurally what happened, the district court allowed the government not to submit the USAO memo because the memo itself was work products and deliberative. It was a privileged document, so the judge ordered us to put in to the record the facts from that memo, which were then recited verbatim in the Milner Declaration. So every factual allegation or piece of evidence that was conveyed by DOJ to HUD was put in the Milner Declaration. Then the district court reviewed the Milner Declaration side-by-side with the US Attorney memo and issued an order saying, I've reviewed both, I can say that verbatim any fact that was communicated by DOJ to HUD and the evidence, the evidentiary support for that is now in the Milner Declaration and so therefore the Milner Declaration stands instead of the USAO. How many declarations are there? Excuse me? How many declarations are there? It's just the one declaration. It was purely put in the record in order to convey those facts. I didn't understand what you were saying. Milner? Milner. M-I-L-N-E-R. And so that is where the thrust of the Milner Declaration was. It was communicated by the Department of Justice. Now HUD did do independent investigatory work. It's not to say that they then stopped and just relied purely on that, although they could have. There's 700 pages in the administrative record which includes records that HUD, after receiving notice of the DOJ investigation, went back. They looked, for example, at HUD audits that found support for the shadow branch branching allegations. Those are also in the administrative record. And there's 700 pages of administrative records, so to say that HUD simply stopped and relied upon that is not accurate. And I would like to address somewhat the... What is the difference between the allegations made by the Department of Justice and those made by HUD? The difference, well, one is that there are a couple of additional allegations that weren't the violations of the False Claims Act, but for example, there was evidence communicated in the report to HUD that some of the branch offices were selling real estate and life insurance policies. That wasn't the basis for any DOJ action because it didn't violate the False Claims Act, but it was an additional charge because it does violate HUD regulations and therefore it was another basis for the suspension. So they looked at the facts, but I think the main difference, to answer Your Honor's question, is the HUD notice of suspensions rely upon HUD's regulations governing suspension. They go through, what are the violations... To what extent did HUD do an independent investigation separate from that of the Department of Justice? I think it's fair to say, Your Honor, that they primarily rely upon the Department of Justice's investigation. They did work to corroborate that where information was within HUD's records. For example, they look at HUD's records regarding how many authorized branches they have... Can you tell me why the Justice Department was designated to address this alleged fraud as opposed to HUD? Excuse me, sir. I'm sorry. Can you tell me why, administratively, the Justice Department had the responsibility for this case instead of HUD? The Department of Justice had started an investigation sometime prior to May 2011 of Allied Capital, Allied Corporation, and Mr. Hodge. And that was an investigation out of the U.S. Attorney's Office in New York. Subsequent to that, there was a related complaint in the District of Massachusetts on similar allegations that they got transferred to New York because of the pre-existing fraud investigation. At the conclusion of the investigation, and somewhat prior to actually initiating the false claims act civil lawsuit, they communicated to HUD, We need you to know that we're going to bring this lawsuit, and here are the results of our findings. And that's when they presented the U.S. Attorney's memo to them. At that time, HUD was in possession of that information, spent some time corroborating, and they decided to issue the suspension. How long after you received the DOJ report did the suspensions occur? Your Honor, that's not in the administrative record. We don't know. Do you know approximately? Was it immediately or a year after? It would have been weeks. I don't have a precise date. Could you in one minute tell us why we don't have jurisdiction? It sounds like we're getting into the merits of a lot of different matters that you are not arguing necessarily that we should decide. Yes, Your Honor. This would be our secondary argument because our primary argument is that this court lacks jurisdiction because the, as I mentioned before, the primary issue that there's no jurisdiction here is that the declaratory relief that the appellant seek wouldn't redress the claimed injury itself of reputational harm is not cognizable under numerous precedents and specifically the Supreme Court's decisions in Lane and Spencer where the Supreme Court says that reputation alone isn't enough and numerous circuit courts have followed that decision. What about collateral consequences to the, to these parties? The collateral consequence that is alleged would be the reputational harm and there's also the claimed loss of business but of course that can't be redressed because this is not a claim for monetary damages. It's purely a claim for declaratory relief so the issue is whether declaratory relief is going to redress the claimed injury of reputational harm. I think it's, the analogous case here would be the Supreme Court's decision in Lane and in Lane that was a collateral effects decision as well. The Supreme Court looked at whether harm to reputation and in that case future employment prospects could be remedied by declaratory judgment and what the Supreme Court said was that it's much more likely that any third party would be concerned with the substance of the underlying charges there and that was a parole violation case than any decision from that court that that parole violation was procedurally improper. The Supreme Court actually said, I'll quote, discretionary decisions made by an employer are more directly influenced by the underlying conduct that form the basis for the violation. Any disabilities that flow from whatever respondents did to evoke revocation of parole are not removed or even affected by a district court order that simply recites that the parole terms are void and that's essentially what's happening here. Thank you. Thank you counsel. No. Okay. If you said what you need to say. Yes, your honor. Thank you very much and for the reasons stated in our brief, we would ask that the judgment below be affirmed. Thank you. Thank you, Ms. Vargas. Okay, Mr. Alexander. She says she has the goods on me. She says she has the goods on me. Then why do I feel so good? I don't know. Let's start with how much time HUD had to deal with this one day. The declaration of Ms. Murray from HUD submitted an preliminary injunction hearing indicating that the DOJ investigation was brought to HUD at the end of October of 2011. It wasn't reached, your honor. This whole setup was a rush job because the Department of Justice out of New York wants trophies. They want scouts to be able to hold up and that's exactly what they did in their press releases and boy aren't they singing a different tune now that we have this case in front of this court. This goes on and on. They have the gall to tell this court that was not based on successor liability, that the action against Allied Corp was not based on successor liability. Well Judge Harmon and Magistrate Judge Hanks said differently. The government's third complaint in their case against Mr. Hodge, the government action, was based on a successor theory of liability under federal common law and Judge Hanks said no. She said they were continuing to do it and the charges or claims were based upon the continuation of the model after the merger of the two companies. She can say whatever she wants today. The complaint on which this case, this action was based which Milner recognizes and even in his one-sided declaration says that Hodge relied on the draft complaint and the draft complaint is virtually identical with the complaint that was filed, virtually identical with the second amendment complaint where Magistrate Hanks said the government's reliance on a successor theory of liability does not state a valid claim on its face. This is nothing more than additional post hoc rationalization for what they're trying to do. What you're saying, so you are denying that there's any evidence that the model continued after the merger, the model that they claim is correct. If you use the term evidence to say one-sided views of information from liars and people with vendettas, is evidence? I don't know whether they're lying or not. I'm taking, if they sign a declaration under oath and say it's true, I'm not going to call them a liar. You may call them a liar. That's your prerogative. But I mean, I accept it as an affidavit from somebody under oath until they're proved to be. Let's make sure we're talking about the same thing. This case was brought based on a relator's case, Mr. Belli. Mr. Belli has been found to be an obstructionist by the U.S. District Court in Massachusetts where he continually misrepresented and failed to participate in the lawsuit in good faith so badly that his answer was a default judgment. That's how reliable the sources of information are, which HUD did not bother to check, which DOJ apparently didn't bother to check. Same thing with Mr. Fowler, found to be a liar on numerous occasions in a lawsuit with Mr. Well, I mean, the allegations are not, you know, they don't paint a very pretty picture of your client either, the allegations. And that's what you're making. You're making allegations against them that don't paint their witnesses very good, but they've got allegations so, I mean, it's like a plague on everybody's house. Right. Isn't that the case? Isn't that the case why an immediate suspension was improper? That is the problem. What is the immediate threat? They say that the business model continues. Well, they can say whatever they want, but the fact of the matter is branches that Allied Corp purchased from Allied Cap didn't happen until September of 2010 and they are basing it on someone who left in August of 2010. They're basing it on someone who left in August of 2010. And so the question is, in all of this, whether there is an immediate threat or this long-going fraud they claim about, where they claim HUD ought to do this and HUD ought to do this, HUD knew all about these things. These shadow branches and mortgagee letter 1994-39 specifically authorized We've gotten off track here somewhere. This argument has, but at any rate, thank you very much. We appreciate the argument and we'll certainly look into the record and see who's right. The entire weapon on the field is something we appreciate. Well, the next case of the day and that's Little Pencil versus Lubbock Independent School District.